## HENRY v. SWAN.
### No. 17493.

Court of Appeal of Louisiana. Orleans.
March 10, 1941.

Sydney J. Parlongue, of New Orleans, for appellant.

Henry E. Fallon, of New Orleans, for appellee.

McCALEB, Judge.

The plaintiff, Anthony Henry, has prosecuted this appeal from a judgment of the First City Court of New Orleans, which rejected his demand against the defendant, Theodore E. Swan, for damages allegedly sustained by him as a result of the defendant's failure to perform a certain subcontract to install plumbing in the premises 3301 Piedmont Drive in the City of New Orleans.

We find the facts of the case to be as follows: Plaintiff is engaged in the general contracting business in the City of New Orleans. On January 10, 1940, he entered into a written contract with the defendant as owner of the property 3301 Piedmont Drive and the Fidelity Homestead Association, the mortgagee of the said property, to erect a single, one-story, frame bungalow for the price of $3,900. After this contract was made, plaintiff, as general contractor, verbally agreed with the defendant, who is a licensed master plumber, to have the latter install the necessary plumbing work in the premises for the price and sum of $324.

In pursuance of the subcontract, the defendant purchased certain plumbing fixtures from Crane & Company and, thereafter, installed them in the residence. Among these fixtures was a built-in bath tub. The evidence shows that, when the bath tub was installed by the defendant, it was in sound condition and that the defendant, in accordance with the custom of the plumbing trade, covered the tub with paper so that it would not be injured or damaged by other contractors who were performing tiling, painting and other work in the bathroom of the house. Notwithstanding these precautions, it appears that a few days after the bath tub had been built in to the wall, it was damaged by some unknown person to such an extent that the homestead and the defendant, acting as owner, refused to accept plaintiff's performance of his contract unless he would agree to install a new tub. When informed of the fact that the tub had been damaged either by his workmen or other subcontractors on the job, the plaintiff refused to be responsible, taking the position that the tub was at the risk of the defendant Swan

until the acceptance of the contract and that the latter was liable for the damage.

Several conferences were thereafter held between the parties with a view of settling the dispute as to which one of them was responsible for the condition of the bath tub and it was finally agreed that plaintiff would pay to the defendant the purchase price of a new bath tub and that the defendant would install the same at his own expense. At the time of the settlement, the defendant owed to the plaintiff, exclusive of the contract price of $3,900 (which was paid to plaintiff by the Fidelity Homestead Association), the sum of $439.29 for extra work performed by plaintiff for defendant's account. In the final adjustment between the parties, various credits were allowed to defendant as offsets against this charge for extra work. Among these credits, which amounted to a total of $410.11, was the allowance of the sum of $38.25 which represented the cost price of the new bath tub to replace the damaged one. The balance due by defendant, after deducting the credits allowed by plaintiff, amounted to $29.18 and, on April 11, 1940, the defendant issued his check to the plaintiff for that sum bearing the notation "paid in full for all extra work at 3503 Piedmont Drive completed". This check was accepted and cashed by the plaintiff.

Thereafter, plaintiff brought this suit against the defendant as subcontractor for breach of performance of the plumbing contract. He claims as damages the sum of $127.30 which is made up of the following items; replacement of tub $38.25, replacement and repairing tile floor in the bathroom $28, and demurrage $61. Defendant denied any responsibility to plaintiff and, after a hearing of the matter on its merits, the trial court dismissed plaintiff's demand.

It will be noticed from the statement of the case that the situation appearing here is unusual in that the relationship between plaintiff and defendant was dual—i. e. owner and contractor and contractor and subcontractor. It is plaintiff's contention that the defendant as his subcontractor is liable to him for the expense he has undergone as a consequence of the damage to the bath tub, because the tub, although in perfect condition when originally installed, was damaged prior to the acceptance of the plumbing work performed under the subcontract.

We do not find that it is necessary for us to determine the correctness of plaintiff's contention since the facts of this case clearly exhibit that the dispute has been settled by amicable agreement and that there has been full accord and satisfaction between the parties. The evidence discloses that, prior to the acceptance of the plaintiff's work, the question as to which one of the parties was responsible for the damaged condition of the tub was thoroughly discussed by them and that the plaintiff agreed with the defendant to pay for the cost of the new tub provided the latter would install it at his own expense. Acting on this agreement, plaintiff received and accepted the check of the defendant as payment in full of the defendant's obligation to him. This acceptance, in our opinion, constituted a settlement of the controversy and the plaintiff is now estopped from contending otherwise. See Davis-Wood Lumber Co. v. Farnsworth & Co., Inc., et al., La.App., 171 So. 622; Meyers v. Acme Homestead Association, 18 La. App. 697, 138 So. 443, Berger v. Quintero, 170 La. 37, 127 So. 356, and Aronson v. Pailet, La.App., 173 So. 545.

Counsel for plaintiff, however, persists that the doctrine of accord and satisfaction should not be applied here, maintaining that, when plaintiff agreed to pay for the new bath tub, he was dealing with the defendant as owner of the property and not as a subcontractor. The actions of the parties at the time of the settlement refute this argument. When the matter of the damaged bath tub was adjusted, the plaintiff agreed to pay for the cost of the new tub in consideration of defendant's promise to install it at his own expense. Surely, it cannot be said that, when the defendant agreed to supply the labor necessary to put in the new tub, he was acting as owner of the property. At all events, it was the plaintiff's duty to make his position clear at the time he made the agreement and he should have specifically reserved to himself the right to proceed against the defendant in the latter's capacity as subcontractor for reimbursement of the added expense which he defrayed as a consequence of the alleged breach of the subcontract. This he failed to do.

Being of the opinion that the judgment of the lower court is correct, it is therefore affirmed.

Affirmed.