DOUCET, Judge.
Plaintiff, Celles Enterprises, a partnership in commendam, leased a restaurant from Harold McCain and, pursuant to the terms of the lease, agreed to pay the Lessor’s pre-existing loan to Peoples Bank & Trust, defendant herein. Subsequently, McCain filed for bankruptcy and the bank instituted executory proceedings to foreclose on the loan whereupon Celles Enterprises sought, unsuccessfully, to intervene. Thereafter, Cedes Enterprises instituted the present action seeking damages allegedly caused by the bank’s foreclosure. After trial on the merits, the trial judge rendered judgment in favor of plaintiffs, against de *855 fendants, awarding damages to the partnership, individual partners and further awarding attorney’s fees. We reverse.
Harold L. McCain, Jr. and his uncle, Frank Winkler, envisioned building a restaurant overlooking Sibley Lake, on Louisiana By-Pass 3110, on the western edge in the City of Natchitoches, to be called “Captain’s Galley”. Pursuant to their plan, McCain and Winkler arranged the financing with The Peoples Bank & Trust Company of Natchitoches, defendant herein. The loan was secured by two collateral mortgages and a collateral chattel mortgage on the restaurant land and equipment. McCain subsequently bought out Winkler and became the sole obligor to the Bank. McCain executed three handnotes to the Bank secured by the aforementioned collateral.
In November 1980 McCain leased the restaurant business to Celles Enterprises, Inc. —1980, A Limited Partnership, a Louisiana partnership in commendam composed of George L. Celles, III as a general partner and limited partners Edward K. Ahrens, Jr., Albin Johnson, George E. Celles, IV, Fred S. Gahagan, and Robert N. Smith. Included in the lease was an option to buy conditioned upon lessee’s assumption of the balance due on various mortgages.
Under the terms of the lease between McCain and the Celles group, 10% of the monthly net sales or $7,000.00, whichever was less, was to be paid “directly to any banks or lending institution which currently hold mortgage indebtedness over the property” leased.
Pursuant to the said terms of the lease, the Celles partnership paid ten (10%) percent of the sales in November to The Peoples Bank & Trust Company, and ten (10%) percent of the sales in December likewise to The Peoples Bank & Trust Company. The McCain notes were in arrears at the time or shortly after the lease was entered into. Accordingly, the Celles group, after negotiations with the bank, paid approximately $17,000.00 to bring the notes current in interest only (but not in principal) in February 1981. In connection therewith, Bea Monk, Office Manager and Comptroller for Celles Enterprises, requested an amortization table to which she received a letter from Gary DeBlieux, on behalf of the bank, stating the monthly installments on each of three notes, the rate of interest and its effective duration. The letter, addressed to George Celles, read as follows:
“Dear George:
Bea had requested an amortization schedule for the notes of McCain-Winkler on Captain’s Galley. I am unable to give you this information because they are not on a fixed interest rate. We approved this loan as a ‘Renegotiated Mortgage’ with the rate to be set every five years. However, I am able to give you the following information concerning these notes:
Note No. BR #27795 Balance $27,332.48 Rate: 14% Due 3-15-81 Pmt. $434.76
Note No. BR #26184 Balance $29,780.03 Rate: 12% Due 3-15-81 Pmt. $485.77
Note No. BR #27794 Balance $338,020.87 Rate 9.5% Due 3-15-81 Pmt. $3,000.00
George, these monthly payments include interest. The rate will be reviewed in January, 1984. Until that date the rate is fixed as shown above.
If you have any questions concerning this matter, or if I can be of further assistance to you, please do not hesitate to let me know.
With kindest personal regards, I remain
Sincerely, s/ Gary S. DeBlieux”
Thereafter, The Peoples Bank sent notices, at the request of Harold McCain, on the McCain-Winkler notes to Celles Enterprises for payment due March 15, 1981, which noted the fact that a slight mistake had been made in computing the interest on February 11, 1981, and that there was another $39.71 due to bring everything up to date. The Celles’ partnership paid accordingly.
In late March or April of 1981, Ken McCoy, McCain’s attorney, advised the Bank that McCain was insolvent and was planning to file a petition for bankruptcy. Upon learning of McCain’s insolvency in April, the Bank immediately called a meeting with the Celles group to advise them of *856 its intention to foreclose on the McCain property unless satisfactory arrangements could be made, to-wit: They would have to take up the approximate $400,000.00 owing The Peoples Bank. The bank offered to lend them the money, provided they all signed a note personally and in solido. The Celles group refused the finance offer.
On April 3, 1981 The Peoples Bank instituted three separate executory proceedings against Harold L. McCain, Jr. One execu-tory action was to foreclose on a $340,000.00 collateral mortgage affecting two tracts in Natchitoches Parish. Another sought foreclosure on a $50,000.00 collateral chattel mortgage affecting a number of items used in connection with a restaurant business. The third sought foreclosure on a $500,-000.00 collateral mortgage dated April 16, 1979 affecting the same property as in the second executory action.
The Celles group sought to enjoin the three foreclosure actions, to which The Peoples Bank responded with an Exception of No Right or Cause or Action based upon the fact that the debts were not owed by the Celles group and they had no standing in Court. The Trial Court, on April 27, 1981, sustained the Exceptions of No Right and No Cause of Action on the basis that the intervenors could not interfere in the execu-tory proceeding between the creditor and the debtor, since their lease was subordinate to the mortgage. Between the date of the rendition of judgment on April 27th and the signing of judgment on April 29th, the intervenors, Celles Enterprises, obtained an ex parte “voluntary dismissal without prejudice as of non-suit with full reservation of rights.” Prom this judgment, no appeal was taken.
The restaurant was closed on April 27, 1981. On May 4, 1981, McCain’s petition in bankruptcy was filed, thereby staying any actions against him.
Subsequently, on May 13, 1981, this suit was brought on behalf of Celles Enterprises, Inc. — 1980, A Limited Partnership, a Louisiana partnership in eommendam, and all of the members thereof, to-wit: Celles Enterprises, Inc., George L. Celles, IV, Edward K. Ahrens, Jr., Albin S. Johnson, Fred S. Gahagan, and Robert N. Smith, and George L. Celles, III, individually, against The Peoples Bank & Trust Company for damages allegedly suffered by the plaintiffs as the result of alleged contractual and delictual wrongs by the defendant bank. The plaintiffs alleged, inter alia, that there was a binding contract between The Peoples Bank & Trust Company and the plaintiffs to the effect the bank would not foreclose if McCain’s notes were paid, that the bank breached the contract, and that the breach of contract resulted in damages to the plaintiffs.
After trial on the merits, the trial court rendered judgment against The Peoples Bank. Damages were awarded to the limited partnership, to each of the limited partners, and for $15,000.00 “for attorney’s fees, said amount to be divided equally among each of the plaintiffs without regard to the differing amounts of the judgments awarded”.
From that judgment, The Peoples Bank filed a petition for a suspensive appeal and the Celles group answered and also filed a devolutive appeal. Numerous specifications of error were alleged by both parties. Our resolution of one issue disposes of all.
Parol evidence is not admissible to prove “any promise to pay the debt of a third person.” LSA-Civ Code Art 2278(3). Seashell, Inc. v. Simon, 398 So.2d 99 (La.App. 3rd Cir.1981); Levy & Dieter v. DuBois, Lowe & Foley, 24 La.Ann. 398 (1872). There is no written promise between the parties to this appeal whereby Celles agrees to pay to Peoples Bank & Trust the debt of McCain. The only written agreement is the lease between McCain and Celles. Similarly, there is no written agreement between Celles and the Bank whereby the obligee would forbear collection of the debt. The letter from defendant to plaintiff did not contain any absolute expression of defendant’s intention to allow assumption of the loan or intention to forbear. The February 1981 letter merely states the factual history of the loan and payment dates. Nevertheless, plaintiff contends a novation occurred *857 as the result of such writing. However, novation is never presumed and the intention to make it must clearly result from the terms of the agreement. LSA-Civ Code Art 2190. Furthermore, the intention of the creditor to novate must be clearly indicated before the original debtor can be discharged. LSA-Civ Code Art 2192. The mere indication made by McCain of a person who was to pay in his place did not operate a novation. LSA-Civ Code Art 2194. Clearly the consent of the creditor is lacking. Just as the promise to pay the debt of a third party is required to be in writing, so is a contract to forbear, relative thereto, required to be in writing.
Furthermore, the facts do not justify application of the doctrine of equitable estoppel. The loss complained of was brought about by plaintiff’s own neglect in failing to secure a written agreement with the bank.
For the reasons assigned hereinabove, the judgment appealed is reversed at plaintiffs cost.
REVERSED.